1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

9

10   ROBERT E. LOUGH,

11              Plaintiff,

12        v.

13   SJAN TALBOT, et al.,

14              Defendants.

CASE NO. 3:19-CV-5280-RBL-DWC

REPORT AND RECOMMENDATION
GRANTING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT

Noting Date: April 17, 2020

15

16        The District Court referred this action, filed pursuant to 42 U.S.C. § 1983, to United

17   States Magistrate Judge David W. Christel.  Currently pending before the Court is the motion of

18   Defendants Department of Social and Health Services (DSHS), Special Commitment Center

19   (SCC), Sjan Talbot, Tony Bowie and Joe Henderson for Summary Judgment ("Motion").  Dkt.

20   27.

21        After reviewing the relevant record, the Court finds Plaintiff Robert E. Lough has failed

22   to provide evidence establishing Defendants substantially burdened his ability to exercise his

23   religion; at most, Plaintiff has alleged sporadic inconveniences, which as a matter of law are

24   insufficient to state a claim under Religious Land Use for Institutionalized Persons Act

(RLUIPA) or the First Amendment.  Plaintiff has likewise failed to provide evidence Defendants acted with discriminatory animus; the SCC actions and policies he challenges apply equally to all residents of the SCC.  Plaintiff claims Defendants refused to respond to discovery, but fails to meet any of the requirements of Fed. R. Civ. P. 54(b) for a continuance.  Finally, Plaintiff asserts for the first time in his response new and unrelated alleged violations of his constitutional rights; any such claims must be brought in a different action and cannot, particularly at this late date, be appended to this one.  Therefore, the Court recommends Defendant's Motion (Dkt. 27) be granted, Plaintiff's federal claims be dismissed with prejudice and his state law claims without prejudice, and this case be closed.

## I.     Background

Plaintiff, who is proceeding *pro se* and *in forma pauperis*, is a civilly committed resident of the SCC.  Plaintiff alleges Defendants violated his religious rights under RLUIPA and the First Amendment, and his right to Equal Protection.  Dkt. 16.  Defendants filed their motion for summary judgment, together with a *Rand* notice, on January 15, 2020.  Dkts. 27, 31.  Plaintiff filed a response, Dkt. 33, and Defendants have replied, Dkt. 34.  In addition, Plaintiff filed a motion on November 15, 2019 (Dkts. 21, 22)[1], entitled motion for summary judgment but construed by the Court as a motion for discovery sanctions, which the Court re-noted to be considered contemporaneously with Defendants' motion.  Dkt. 32.  Plaintiff's motion (Dkts. 21, 22) is addressed in a separate Report and Recommendation.

Plaintiff did not submit any declarations or evidence in response to Defendants' motion.  However, Plaintiff's Amended Complaint was signed under penalty of perjury.  Dkt. 16 at 23.

_____

[1] Plaintiff filed virtually identical motions roughly five weeks apart. Dkts. 21, 22.  The text of each is identical, but the earlier-filed motion contains two additional exhibits. Dkt. 21.  Because that version is more complete, the Court refers to it herein.

1  Thus, to the extent they are based upon personal information and set forth facts that would be

2  admissible in evidence, Plaintiff's factual allegations in his Amended Complaint will be considered

3  as evidence. *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

4       *A. Plaintiff's Evidence*

5       Plaintiff's Amended Complaint identifies several actions and incidents, primarily occurring

6  after Defendant Henderson became Program Service Manager in 2018, which Plaintiff alleges

7  constitute violations of his religious rights or discrimination due to his status as a Native American.

8  For orderly analysis, the Court has grouped these into categories.

9       1.    Access to Traditional Ceremonial Foods

10      Plaintiff asserts a change of policy in March, 2019 prohibited frybread at a Change of

11  Seasons ceremony. Dkt. 16 at 11. Plaintiff also generally asserts other unspecified "cultural" food

12  has been prohibited and food orders were required to be made from a single vendor, Albertson's,

13  rather than from Native vendors. *Id.* at 7, 12-13.

14      2.    "Sacred Medicine" Prohibitions, Confiscations and Searches

15      Plaintiff states Native American religious practitioners are no longer permitted to grow

16  "any sacred medicines for ceremonies," and such medicines have been confiscated. *Id.* at 13, 8.

17  Plaintiff also asserts Native Americans, including Plaintiff, were subject to searches before being

18  allowed to leave the religious yard, and their rooms were searched without appropriate religious

19  supervision. *Id.* at 7, 12, 13.

20      3.    Early Termination of Sweat Lodge Ceremonies

21      Plaintiff asserts Native American sweat lodge ceremonies were ended early "multiple

22  times." *Id.* at 7, 12.

23

24

1                4.     Limitations on Annual Powwow

2      Plaintiff asserts visitors, guests and attorneys who had previously been permitted to attend

3 the annual Powwow were barred, and photographs of the Powwow were "not permitted." *Id.* at 8,

4 13.

5                5.     Access to Fuel for Wood Splitter

6      Plaintiff asserts Defendants refused to allow use of a gas can to fill the wood splitter used to

7 cut wood for the sweat lodge, instead requiring the splitter to be transported to the tank. Plaintiff

8 also contends Defendants would not provide more fuel until all wood had been used.

9                6.     Damage and Access to Religious Yard

10      Plaintiff contends items, including prayer ties and blankets, were "stolen" from the sweat

11 lodge, and that it and the religious yard have been damaged or broken "numerous times." *Id.* at 8,

12 12. Plaintiff also contends Native Americans are given access to the religious yard only two times

13 a month while other religious groups are given daily access. *Id.* at 7.

14     *B. Defendants' Evidence*

15      Defendants submitted declarations from Nicole Brees, the Legal Coordinator and Records

16 Manager of SCC, Defendant Henderson, the Program Manager of SCC, and Edward Cloud, a

17 former Chaplain of SCC. Dkts. 28, 29 and 30. Ms. Brees' declaration attaches grievances

18 submitted by Plaintiff regarding the issues raised in the Amended Complaint, as well as

19 investigation results. Dkt. 28-1. The grievance records and Defendant's declarations provide

20 detail and context for the circumstances alleged in Plaintiff's more generalized assertions.

21                1.     Access to Traditional Ceremonial Foods

22      Defendants acknowledge SCC's policies regarding resident-made fry bread changed before

23 the March, 2019 Change of Seasons ceremony, due to a health and safety requirement that food for

24

1  the use of others be prepared only by individuals with food handler cards. Dkt. 29 at ¶10. Plaintiff

2  filed a grievance regarding this change, which was resolved by making arrangements for residents

3  to obtain their food handler cards. Dkt. 28-1 at 125-129. Three members of the Native American

4  religious group were selected for this process, enabling the preparation of resident-made fry bread

5  going forward. Dkt. 28-1 at 125, 128.

6       Defendants also acknowledge SCC implemented changes to prior practices for bringing

7  ceremonial foods to the SCC. Dkt. 29 at ¶11. Previously, the Chaplain had personally obtained

8  such food, including perishables—and sometimes stored it overnight in his car. *Id*. This practice

9  was discontinued due to health and safety concerns; all perishable food must now be ordered from

10  approved vendors who will appropriately ship it to the SCC. *Id*. However, there is an exception

11  process which allows ordering from unapproved vendors as long as the vendor appropriately ships

12  the food. *Id*.

13       2.    "Sacred Medicine" Prohibitions, Confiscations and Searches

14       Defendants acknowledge SCC imposes limitations upon tobacco use and storage. Dkt. 29

15  at ¶¶ 5-9, 14. Tobacco use is prohibited at SCC, but there is an exception authorizing its use in

16  religious ceremonies. *Id*. at ¶ 5; Dkt. 29-1. Such use may occur only outside  and only during

17  authorized religious practices under staff supervision. *Id*. Residents are not permitted to have

18  tobacco in their rooms. Dkt. 29 at ¶ 9. In 2018, it was discovered a prior Chaplain had brought in

19  excess tobacco and permitted residents to take it to their rooms in violation of SCC policy. *Id*.

20  Accordingly, in November 2018 staff searched the property for and seized contraband tobacco. *Id*.

21       In addition, under the prior Chaplain, the Native American religious group had been

22  permitted to grow tobacco in the religious yard. *Id*. at ¶14. When Defendant Henderson learned of

23  this practice, he authorized the harvesting of the crop and directed it to be placed in the Chaplain's

24

1  office to dry.  However, residents later moved the tobacco.  *Id*.  Defendant Henderson then turned

2  the tobacco over to the Native American group's community volunteer.  *Id*.  This volunteer is able

3  to bring the tobacco to the SCC for ceremonial use.  *Id*.

4        While in the religious yard, residents have access to contraband materials, including

5  tobacco and tools, which are prohibited elsewhere in the SCC.  *Id*. at ¶8.  SCC policy requires

6  random pat searches be conducted when residents are moving from areas where restricted materials

7  are permitted.  *Id*. at 8; Dkt. 29-2; Dkt. 28-1 at 105-110.  Thus, while Defendants agree Native

8  American religious group members are subject to random pat searches when they leave the

9  religious grounds, Defendants contend it is due to a generally applicable SCC policy to prevent the

10  movement of contraband.

11                  3.    <u>Damage and Access to Religious Yard</u>

12        Plaintiff has filed  grievances complaining of damage or disorder of the religious yard, two

13  of which complain of disturbances in the three years preceding Plaintiff's filing of this action. [2]

14  Dkt. 28-1 at 54-55, 80-91.  The first incident involved a search by staff; review of video by the

15  grievance investigator revealed no inappropriate conduct.  Dkt. 28-1 at 55.  SCC Staff investigated

16  the second incident—in which Plaintiff claimed prayer poles were uprooted, a drain pipe was

17  clogged and plastic sheeting was damaged—including a walk-through with Plaintiff, review of

18  access logs and review of security camera footage.  The investigation corroborated the damage but

19  could not determine the cause.  Dkt. 28-1 at 81.  Former Chaplain Cloud submitted a declaration

20  noting the religious yard is an outdoor area exposed to the elements, and he has personally seen

21

22

23      [2] The statute of limitations for a §1983 action is three years.  *Rose v. Rinaldi*, 654 F.2d 546, 547 (9th Cir. 1981) (three year limitations period identified in RCW 4.16.080(2) is the applicable statute of limitations for § 1983 cases in Washington).  Thus, Plaintiff has no claim for alleged constitutional violations occurring before April,

24  2016.

1  raccoons digging and playing in the area, including on the sweat lodge structure.  Dkt. 30 at ¶¶ 7, 8.

2  Damage has also occurred in the past in areas of the religious yard used by other groups.  Dkt. 30-2

3  at 2.

4         Defendants dispute Plaintiff's assertion that Native American access to the religious yard is

5  limited to twice-monthly sweat lodge ceremonies.  Defendant Henderson states that, in addition to

6  regularly scheduled events, residents may have access to the religious yard upon three days' notice

7  to ensure adequate staff supervision, and additional access can be requested and accommodated.

8  Dkt. 29 at ¶4

9               4.    <u>Early Termination of Sweat Lodge Ceremonies</u>

10         Defendants concede sweat lodge ceremonies were ended before their scheduled closing

11  time on isolated occasions.  During the three years preceding Plaintiff's filing of this action,

12  Plaintiff filed grievances contesting two early closures, on December 5, 2018 and January 16,

13  2019.  Dkt. 28-1 at 93-96, 112-122.  Defendant Henderson explains these closures were anomalous

14  and due solely to staffing shortages.  Dkt. 29 at ¶12.

15               5.    <u>Limitations on Annual Powwow</u>

16         Defendants submitted evidence that each SCC group is permitted one special event per

17  year; pursuant to SCC policy, the event must be scheduled 90 days in advance.  Dkt. 29 at ¶16,

18  Dkt. 29-2.  Outside guests are permitted at these events, as is outside food that is transported by

19  refrigerated truck.  Dkt. 29-2 at 4.  The Native American group holds an annual Powwow as its

20  special event.  Dkt. 29 at ¶16.  In 2018, the Powwow took place as usual, but outside guests were

21  not approved because the Native American group had not provided the required 90 days' notice

22  and had already held a special event that year.  *Id.*  Defendants contend this was an anomaly, and

23  the 2019 Powwow included outside guests.  *Id.*

24

1    Plaintiff filed a grievance complaining the Chaplain was "not permitted" to take photos at

2    the 2018 Powwow.  Dkt. 28-1 at 60-62.  Defendants submitted evidence showing the lack of

3    photographs was due to the unavailability of a shared camera, and additional cameras have since

4    been purchased.  There is no prohibition of photographs at ceremonies.  *Id.*

5                        6.    Access to Fuel for Wood Splitter

6    Plaintiff filed a grievance complaining Native American group members were not allowed

7    to personally transport gas to the wood-splitter used to cut wood for their sweat lodge.  Dkt. 28-1 at

8    65-70.  Defendant Henderson explains residents are not permitted to carry fuel around the facility

9    for safety and security reasons; however, gas will be supplied by maintenance employees.  Dkt. 29

10   at ¶15.  No sweat lodge ceremony has been cancelled or delayed for lack of wood or fuel for the

11   wood splitter.  *Id.*

12   **II.    Standard of Review**

13   Summary judgment is proper only if the pleadings, discovery, and disclosure materials on

14   file, and any affidavits, show there is no genuine dispute as to any material fact and the movant is

15   entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).  The moving party is entitled to

16   judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an

17   essential element of a claim in the case on which the nonmoving party has the burden of proof.

18   *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  There is no genuine issue of fact for trial

19   where the record, taken as a whole, could not lead a rational trier of fact to find for the

20   nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)

21   (nonmoving party must present specific, significant probative evidence, not simply "some

22   metaphysical doubt"); *see also* Fed. R. Civ. P. 56(e).  Conversely, a genuine dispute over a

23   material fact exists if there is sufficient evidence supporting the claimed factual dispute,

24

1  requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby,*

2  *Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d

3  626, 630 (9th Cir. 1987).

4  **III.    Discussion**

5      Defendants argue Plaintiff's religious practice has not been burdened and he has been

6  afforded the same opportunities to practice his religion as other residents. Dkt. 28.  Plaintiff did not

7  respond substantively to Defendants' arguments, instead contending the Court should grant his

8  motion seeking monetary sanctions against Defendants for alleged discovery failures.  Dkt. 33.

9      *A.  Plaintiff is a Civil Detainee*

10      As an initial matter, the Court notes Plaintiff is not a prisoner.  Plaintiff is serving a civil

11  commitment term at a secure facility. *See* Dkt. 9.  As a civilly committed individual, Plaintiff is

12  entitled to more considerate treatment and conditions of confinement than criminals whose

13  conditions of confinement are designed to punish.  *Youngberg v. Romeo,* 457 U.S. 307, 319-22

14  (1982) (individuals who are involuntarily civilly committed have constitutionally protected rights

15  under the due process clause to reasonably safe conditions of confinement).  A civilly detained

16  person cannot be subject to conditions amounting to punishment, but legitimate, non-punitive

17  government interests include "effective management of a detention facility." *See Jones v.*

18  *Blanas,* 393 F.3d 918, 932 (9th Cir. 2004).  Relying on *Youngberg,* the Ninth Circuit has held

19  court decisions which define the constitutional rights of prisoners can be relied upon to establish

20  a floor for the constitutional rights of those who are civilly detained as sexually violent predators.

21  *Padilla v. Yoo,* 678 F.3d 748, 759 (9th Cir. 2012); *Hydrick v. Hunter,* 500 F.3d 978, 989 n. 7 (9th

22  Cir. 2007).  Thus, the Court proceeds to analyze Plaintiff's claims by considering decisions

23  defining the rights of prisoners.

24

*B. RLUIPA*

Plaintiff alleges Defendants' conduct has substantially burdened his religious practice. Defendants argue the incidents cited by Plaintiff do not rise to the level of substantial interference required by RLUIPA, and in any event Defendants' actions further compelling interests by the least restrictive means.

### 1. Legal Standard

RLUIPA provides in relevant part:

No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—

(1) is in furtherance of a compelling governmental interest; and

(2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1.

A plaintiff "bears the initial burden of going forward with evidence to demonstrate a prima facie claim" that the challenged state action constitutes "a substantial burden on the exercise of his religious beliefs." *Warsoldier v. Woodford*, 418 F.3d 989, 994 (9th Cir. 2005). If the plaintiff is able to meet this burden, the state then must prove "any substantial burden" on the "exercise of his religious beliefs is both 'in furtherance of a compelling governmental interest' and the 'least restrictive means of furthering that compelling governmental interest.'" Id. (quoting 42 U.S.C. § 2000cc-1(a), citing 42 U.S.C. § 2000cc-2(b)) (emphasis in original).

RLUIPA does not define "substantial burden." *San Jose Christian Coll. v. City of Morgan Hill*, 360 F.3d 1024, 1034 (9th Cir. 2004). However, as the Ninth Circuit has explained, to be considered a "substantial burden," the challenged state action "must impose a significantly great

restriction or onus upon [religious] exercise," such that it "intentionally puts significant pressure on inmates … to abandon their religious beliefs." *Warsoldier*, 418 F.3d at 995-96. The government "must place more than an inconvenience on religious exercise." *Guru Nanak Sikh Soc'y of Yuba City v. Cnty. of Sutter*, 456 F.3d 978, 988 (9th Cir. 2006) (internal quotation marks omitted). "The diminishment of spiritual fulfillment—serious though it may be—is not a 'substantial burden' on the free exercise of religion." *Navajo Nation v. U.S. Forest Serv.*, 535 F.3d 1058, 1070 (9th Cir. 2008). In considering a challenge to institutional policies, the Court considers whether the government's conduct "'denies [an important benefit] because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1124-25 (9th Cir. 2013) (quoting *Warsoldier*, 418 F.3d at 995 (alteration in original)). On the other hand, the Supreme Court has not read RLUIPA as elevating the "accommodation of religious observances over an institution's need to maintain order and safety." *Cutter v. Wilkinson*, 544 U.S. 709, 722 (2005). Indeed, "prison security is a compelling state interest," and "deference is due to institutional officials' expertise in this area." Id. at 724 n.13.

Plaintiff has failed to establish that any of the categories of restrictions about which he complains amounts to a substantial burden on his religious practice.

First, Defendants have not prohibited Plaintiff's access to frybread or other traditional religious foods. Defendants arranged for members of the Native American group to obtain food handlers cards to enable them to make frybread. Dkt. 29 at ¶10. Other cultural foods can be purchased through the SCC's official vendor, or through an exception process from other vendors who provide transportation consistent with food safety. *Id*. at ¶11. A prisoner "does not have a constitutional right to a vendor of his choice." *Davis v. Powell,* 901 F. Supp. 2d 1196, 1215 (S.D.

1  Cal. 2012). At most, Plaintiff has alleged an inconvenience in losing access to preferred vendors

2  who cannot deliver their food according to acceptable safety standards. This is insufficient to state

3  a RLUIPA claim. *Guru Nanak Sikh Soc'y*, 456 F.3d at 988.

4      Second, Defendants' tobacco policies limit, but do not prohibit, religious tobacco use.

5  Tobacco remains available for ceremonial use. Dkt. 29 at ¶14. That Plaintiff cannot grow tobacco

6  or keep it in his room does not prevent his religious practice. *See Hodgson v. Fabian*, No. CIV.

7  08-5120 JNESRN, 2009 WL 2972862, at *13 (D. Minn. Sept. 10, 2009) ("Plaintiff is not

8  prohibited from using prayer oils to express his religion; he is only prohibited from keeping or

9  using prayer oils in his cell"), *aff'd*, 378 F. App'x 592 (8th Cir. 2010). Likewise, ceremonial use of

10  tobacco is not burdened by Defendants' enforcement of its strict no-tobacco policies elsewhere at

11  the SCC. Searches to ensure contraband is not removed from ceremonial venues where it is

12  permitted to those where it is not do not burden ceremonial use; they only prevent abuse outside of

13  that realm. Defendants' tobacco restrictions have not imposed "a significantly great restriction or

14  onus" upon Plaintiff's religious exercise. *Warsoldier*, 418 F.3d at 995-96. *See also Runningbird v.*

15  *Weber*, 198 Fed.App'x 576, 577 (8th Cir. 2006) (institutions may impose limits on tobacco and

16  sweat lodge ceremonies).

17      Third, Plaintiff's access to the religious yard is not so restricted that his religious practice

18  has been burdened. Plaintiff has access to the yard for all of the Native American religious

19  ceremonies and may arrange for any additional access he requires. Dkt. 29 at ¶4. Plaintiff has

20  submitted no evidence establishing that damage or disorder of the religious yard has prevented or

21  substantially interfered with any ceremony or religious practice.

22      Plaintiff's remaining complaints concern sporadic or one-time events or minor

23  inconveniences that place little or no burden on religious practice. Sweat lodge ceremonies are

24

1  performed twice a month; only twice in the past three years were they terminated early due to staff

2  shortages. Dkt. 29 at ¶ 12. Powwows have taken place yearly. In only one instance, outside

3  guests were not permitted and a camera was unavailable. Plaintiff has submitted no evidence those

4  one-time events had any negative religious significance. SCC policy, for obvious safety reasons,

5  prohibits residents from carrying gasoline, but no sweat lodge ceremony has been impeded by a

6  lack of firewood or lack of gasoline in the log splitter. Dkt. 29 at ¶15. None of these incidents

7  amounts to more than "an inconvenience on religious exercise," which does not meet the

8  substantial burden requirement of RLUIPA. *Guru Nanak Sikh Soc'y*, 456 F.3d at 988. *See also*

9  *Gallagher v. Shelton*, 587 F.3d 1063, 1070 (10th Cir. 2009) (a single violation of Plaintiff's kosher

10  diet fails to state a RLUIPA claim).

11      *C. First Amendment*

12          To establish a free exercise claim, Plaintiff "must show the [defendants] burdened the

13  practice of [his] religion, by preventing him from engaging in conduct mandated by his faith,

14  without any justification reasonably related to legitimate penological interests." *Freeman v.*

15  *Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997), *overruled in part on other grounds, Shakur v.*

16  *Schriro*, 514 F.3d 878, 884-85 (9th Cir. 2008). The First Amendment does not reach the

17  "incidental effects" of otherwise lawful government programs "which may make it more difficult

18  to practice certain religions, but which have no tendency to coerce individuals into acting

19  contrary to their religious beliefs." *Lyng v. Northwest Indian Cemetery Protective Ass'n*, 485

20  U.S. 439, 450-51 (1988). As under RLUIPA, a free exercise violation occurs only where a

21  burden imposes more than an inconvenience on religious exercise. *See Guru Nanak Sikh Soc'y,*

22  456 F.3d at 988 (relying on the Supreme Court's free exercise jurisprudence in defining a

23  substantial burden under RLUIPA); *Warsoldier*, 418 F.3d at 995-96 (same). If such a burden is

24

REPORT AND RECOMMENDATION GRANTING
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT - 13

1  established, the court must then analyze the reasonableness of the regulation at issue under the

2  four-factor test identified in *Turner v. Safley*, 482 U.S. 78, 89-90 (1987).

3       For the reasons discussed in connection with Plaintiff's RLUIPA claim, Plaintiff has not

4  established Defendants' actions imposed a constitutionally cognizable burden upon his ability to

5  practice his religion.  At most, he has alleged "inconvenience on religious exercise," and not

6  "substantial pressure . . .to violate his beliefs." *Guru Nanak Sikh Soc.*, 456 F.2d at 988.  In light

7  of Plaintiff's failure to establish this threshold element, the court need not apply the *Turner*

8  factors to determine whether the policies are reasonably supported. *Patel v. U.S. Bureau of*

9  *Prisons*, 515 F.3d 807, 813 (8th Cir. 2008).

10       *D.  Equal Protection*

11       Finally, Plaintiff fails to establish Defendants' religious policies or practices violated his

12  right to Equal Protection.

13       In the religious exercise context, "[p]risoners enjoy religious freedom and equal

14  protection of the law subject to restrictions and limitations necessitated by legitimate penological

15  interests." *Freeman*, 125 F.3d at 737 (Constitution's Equal Protection guarantee ensures

16  institution officials cannot discriminate against particular religions).  An institution's officials,

17  therefore, "must afford an inmate 'a reasonable opportunity of pursuing his faith comparable to

18  the opportunity afforded fellow prisoners who adhere to conventional religious precepts.'" *Id.*

19  (citing *Cruz v. Beto*, 405 U.S. 319, 322 (1972)).  However, institutional officials need not make

20  identical provisions to different faiths, but rather "must make 'good faith accommodation of the

21  [prisoners'] rights in light of practical considerations." *Id.*  Accordingly, Plaintiff must show

22  Defendants "intentionally acted in a discriminatory manner," although such intent sometimes

23  may be inferred by the mere fact of different treatment. *Id.*  (citing *Sischo-Nownejad v. Merced*

24

REPORT AND RECOMMENDATION GRANTING
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT - 14

1  *Comty. College Dist.*, 934 F.2d 1104, 1112 (9th Cir. 1991).

2      To demonstrate an Equal Protection violation, Plaintiff "must show that the defendants

3  acted with an intent or purpose to discriminate against the plaintiff based upon membership in a

4  protected class." *Barren v. Harrington,* 152 F.3d 1193, 1194 (9th Cir. 1998).  To defeat

5  summary judgment on a discrimination claim, the plaintiff must "produc[e] evidence sufficient

6  to permit a reasonable trier of fact to find by a preponderance of the evidence that" the

7  challenged action was motivated by animus against the protected trait. *FDIC v. Henderson,* 940

8  F.2d 465, 473 (9th Cir. 1991).

9      Plaintiff does not meet his burden.  First, Plaintiff alleges only one aspect in which he

10  claims other religions are treated differently:  Plaintiff alleges Native Americans may only access

11  the religious yard twice per month "while 'all' of the other religious groups are still allowed

12  daily access/prayer to theirs."  Dkt. 16 at 8.  Plaintiff provides no evidentiary support for this

13  conclusory statement. *See Runningbird*, 198 F. App'x at 578 (8th Cir. 2006) ("general verified

14  allegations about other religious groups being treated more favorably are not sufficiently specific

15  to support an equal protection claim.").  Defendants, on the other hand, have provided evidence

16  all residents may access the religious yard with three days' notice or by special request.  Dkt. 29

17  at ¶4.

18      Plaintiff asserts Defendants have conducted "cell searches of Native Americans only."

19  Dkt. 16 at 14.  But Defendants have submitted evidence, unrebutted by Plaintiff, establishing the

20  searches were for the purpose of locating contraband tobacco improperly taken to residents'

21  rooms from Native American ceremonies.  Dkt. 29 at ¶9.  Plaintiff has not rebutted Defendants'

22  evidence the searches were motivated not by discriminatory animus, but by a pursuit of

23  contraband.

24

REPORT AND RECOMMENDATION GRANTING
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT - 15

1   The remaining actions cited by Plaintiff likewise fail to establish a discriminatory

2 animus.  Plaintiff repeats his allegations he is "no longer allowed" to make frybread or to order

3 Native American cultural foods from his vendors of choice and guests are "not allowed" to

4 attend the Powwow ceremony.  Dkt. 16 at 14.  Defendants' evidence establishes no such

5 prohibitions exist.  Instead, health and safety limitations applicable to all groups apply to cooking

6 and ordering food, and all groups have access to their traditional foods as long as it can be safely

7 delivered.  Dkt. 29 at 10, 11.  There is no general prohibition of Powwow guests; all groups must

8 comply with SCC policies to register their annual events and submit their guest lists.  Dkt. 29 at

9 ¶16; Dkt. 29-2.

10   Plaintiff has submitted no evidence demonstrating discriminatory animus.  His purely

11 speculative conspiracy theories are not evidence.  Plaintiff cannot defeat summary judgment with

12 "unsupported conjecture or conclusory statements." *Hernandez v. Spacelabs Med. Inc.*, 343 F.3d

13 1107, 1112 (9th Cir. 2003).  Plaintiff's equal protection claims should be dismissed.

14   *E.  Defendants' Additional Arguments*

15   Defendants have argued additional grounds for dismissal of some or all of Plaintiff's

16 claims.  Dkt. 27 at 9, 15-16.  Because the Court has determined summary judgment is

17 appropriate on the grounds discussed herein, it is not necessary to reach the additional arguments

18 offered by Defendants.

19   *F.  State Law Claims*

20   Plaintiff's Complaint also purports to assert claims under the Washington Constitution

21 and RCW 71.09.  Dkt. 16 at 3.

22   A district court has discretion over whether to exercise supplemental jurisdiction over

23 state law claims arising from the same set of operative facts supporting a federal claim.  *See*

24

1  *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639-40 (2009).  Ordinarily, when a district

2  court dismisses "all claims independently qualifying for the exercise of federal jurisdiction," it

3  will dismiss all related state claims, as well.  *Artis v. District of Columbia*, __U.S. __, 138 S. Ct.

4  594, 597-98, (2018); *see also Carlsbad Tech.*, 556 U.S. at 639-40.  Although the court is not

5  required to dismiss the supplemental state law claims, "in the usual case in which all federal-law

6  claims are eliminated before trial, the balance of factors to be considered under the pendent

7  jurisdiction doctrine—judicial economy, fairness, convenience, and comity—will point toward

8  declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ.*

9  *v. Cohill*, 484 U.S. 343, 350 n.7 (1988).

10        The Court recommends granting Defendants' Motion for Summary Judgment on all of

11  Plaintiff's federal claims.  Accordingly, as none of the factors under the pendent jurisdiction

12  doctrine supports exercising supplemental jurisdiction, the Court recommends declining

13  supplemental jurisdiction over Plaintiff's state law claims and dismissing those claims without

14  prejudice.

15        *G. Discovery*

16        Plaintiff argues the Court should consider his pending motion seeking discovery

17  sanctions before considering Defendants' motion for summary judgment, and asserts Defendants

18  have "ignored" his discovery requests.  Dkt. 33 at 2.  Defendants deny they have violated any

19  discovery rules and contend they have not been served with any requests.  Dkt. 34 at 2.  The

20  Court construes Plaintiff's argument as a request for a continuance pursuant to Fed. R. Civ. P.

21  56(d).

22        Rule 56(d) of the Federal Rules of Civil Procedure provides:

23        When Facts Are Unavailable to the Nonmovant. If a nonmovant shows by
          affidavit or declaration that, for specified reasons, it cannot present facts

24

1  essential to justify its opposition, the court may:

2          (1) defer considering the motion or deny it;
            (2) allow time to obtain affidavits or declarations or to take discovery; or
3          (3) issue any other appropriate order.

4  Fed. R. Civ. P. 56(d).[3]

5          The party seeking such a continuance must make (a) a timely application which (b)

6  specifically identifies (c) relevant information, (d) where there is some basis for believing that

7  the information sought actually exists. *Emplrs. Teamsters Local Nos. 175 & 505 Pension Trust*

8  *Fund v. Clorox Co.,* 353 F.3d 1125, 1129–1130 (9th Cir. 2004).  The burden is on the party

9  seeking additional discovery to proffer sufficient facts to show the evidence sought exists.

10 *Chance v. Pac–Tel Teletrac, Inc.,* 242 F.3d 1151, 1161 n. 6 (9th Cir. 2001).  The Court may deny

11 the request unless the party opposing summary judgment articulates how additional discovery

12 may preclude summary judgment and demonstrates diligence in pursuing discovery thus far.

13 *Qualls v. Blue Cross of California, Inc.,* 22 F.3d 839, 844 (9th Cir. 1994).

14         Plaintiff has not submitted the declaration required by Fed. R. Civ. P. 56.  He has not

15 specified the evidence he seeks to discover and has not established a causal connection between

16 any such evidence and his claim of interference with his religious practice.  Thus, Plaintiff has

17 not demonstrated the existence of relevant and essential evidence obtainable only through

18 discovery, nor that this evidence is needed to properly respond to the pending summary

19 judgment motion.[4]  *See Margolis v. Ryan,* 140 F.3d 850, 853-54 (9th Cir. 1998) (district court

20

21 _____

22 [3] Effective December 1, 2009, Rule 56 was amended such that subdivision (d) carries forward without substantial change the provisions of the former subdivision (f). See Advisory Committee Note to Rule 56. Thus, the body of law developed under prior Rule 56(f) applies to the current Rule 56(d) motion.
23

24 [4] Indeed, facts regarding the burdens on Plaintiff's religious practice are within Plaintiff's own knowledge and likely do not require further discovery.

1  correctly denied motion for continuance to engage in further discovery under Rule 56(d) where

2  plaintiff did not provide any basis or factual support for his assertions further discovery would

3  lead to the facts and testimony he described, and his assertions appeared based on nothing more

4  than "wild speculation").

5      Accordingly, the Court concludes Plaintiff has not demonstrated a need for discovery

6  before opposing Defendants' motion for summary judgment and, to the extent his argument

7  could be construed as a request for a continuance, the request should be denied.

8      *H.  Allegation of New Claims*

9      Plaintiff's response to Defendant's motion asserts new and unrelated allegations that

10  unnamed defendants retaliated against Plaintiff by re-assigning his housing and that a non-party,

11  Brian Shirley, refused to authorize the purchase of a printer on Plaintiff's behalf.  Dkt. 33 at 3;

12  Dkt. 21 at 4.

13      To the extent Plaintiff attempts to raise new constitutional claims against new parties by

14  virtue of his response to Defendants' motion and his motion for sanctions, Plaintiff must do so

15  by filing a separate complaint.  *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (amended

16  complaint may not change the nature of a suit by alleging new, unrelated claims); *see also* Fed.

17  R. Civ. P. 20(a)(2) (joinder of defendants not permitted unless both commonality and same

18  transaction requirements are satisfied).  "Unrelated claims against different defendants belong in

19  different suits, not only to prevent the sort of morass [a multiple claim, multiple defendant] suit

20  produce[s], but also to ensure that prisoners pay the required filing fees-for the Prison Litigation

21  Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file

22  without prepayment of the required fees.  28 U.S.C. § 1915(g)."  *George*, 507 F.3d at 607.

23

24

REPORT AND RECOMMENDATION GRANTING
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT - 19

1    Plaintiff may not change the nature of this suit by alleging new, unrelated claims—particularly at

2    this late stage of the litigation, after the discovery cutoff and dispositive motion deadline.

3         *I.  In forma Pauperis Status on Appeal*

4         The Court recommends revoking Plaintiff's *in forma pauperis* (IFP) status for purposes

5    of appeal.  IFP status on appeal shall not be granted if the district court certifies "before or after

6    the notice of appeal is filed" "that the appeal is not taken in good faith[.]"  Fed. R. App. P.

7    24(a)(3)(A); *see also* 28 U.S.C. § 1915(a)(3).  A plaintiff satisfies the "good faith" requirement if

8    he seeks review of an issue that is "not frivolous."  An appeal is frivolous where it lacks any

9    arguable basis in law or fact.  *Gardner v. Pogue*, 558 F.2d 548, 551 (9th Cir. 1977); *Neitzke v.*

10   *Williams*, 490 U.S. 319, 325 (1989).  Because Plaintiff's claims fail as a matter of law, any

11   appeal would likewise lack an arguable basis in law; Plaintiff's IFP status should therefore be

12   revoked for purposes of any appeal.

13   **IV.   Conclusion**

14        For the above stated reasons, the Court recommends Defendants' Motion for Summary

15   Judgment (Dkt. 27) be granted, the federal claims in the Amended Complaint be dismissed with

16   prejudice, the state law claims be dismissed without prejudice, and this case be closed.

17        Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen

18   (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6.  Failure

19   to file objections will result in a waiver of those objections for purposes of *de novo* review by the

20   district judge. *See* 28 U.S.C. § 636(b)(1)(C).  Accommodating the time limit imposed by Fed. R.

21

22

23

24

REPORT AND RECOMMENDATION GRANTING
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT - 20

1  Civ. P. 72(b), the clerk is directed to set the matter for consideration on April 17, 2020, as noted in

2  the caption.

3          Dated this 31st day of March, 2020.

4

5                                          David W. Christel
                                           United States Magistrate Judge
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

REPORT AND RECOMMENDATION GRANTING
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT - 21